Ready. Thank you, Your Honor. Thank you, Your Honors, and I would like to reserve two minutes for rebuttal. May it please the Court, Richard Jacobs for Appellant Limetree Estates. This case is about the most basic right an owner has, the right to exclude others from its land, and a city that has taken it away. A private road, Tangerine Road, has slid roughly a parcel and a half off of its recorded easement and now physically bisects Limetree's parcel. Just so I understand the facts, and maybe the, you know, you would think that as land moves that the relationships between the things on the land would move. There's a road, there's a parcel, the parcel. So is the contention here that there was differential movement between the road and the land underneath it so that the road slid and the land didn't slide as much? Yes, Your Honor, the road moved more than a parcel and a half from its original location onto my client's land. But the ground around it did not move with it? There was ground movement, but again, as was argued by the opposing side in a separate case, which I can get to, the boundaries don't move. So whether the land moves or not, whether the road moves or not, the boundaries stay where they are. If you had a house, I mean, this is an undeveloped parcel, but if you had a house, you had things on every corner of the, it was all very well marked and the road is not on the land. Is this a situation where all those, the road moves, but the, you know, the house, all those other things stay the same? Is there no relevant, relative difference in movement between the parcel? There is a lot of movement, but there is, it's differentiated movement. Some areas it moves more, some areas moves less. An example of that is my client has another parcel in the area where a house has moved onto his land. That went through to the appellate court and was actually ruled in our favor to send back because it was, a demur was granted against it. Does everyone agree that the parcel hasn't moved in the same way that the road has in this case? Does everyone agree or do you understand there to be a dispute on the issue of this differential that the road has moved differently from the parcel? I believe that at the end of the day, it's tough to say what has moved more or less, but the road and the land around it has moved. But the issue is that this particular easement was done by Meats and Bounds with specific points saying the easement travels from this point to this point with very specifics in it. It was not a general easement and that's a very important point because in the prior case in which the lower court made its ruling on, there was a general easement finding and the reason why. So people are still able to travel both Tangerine Road and Lime Tree Road, is that correct? Oh yes, and that's the problem. So it's open, all right. Now, if your client when he purchased this land in 2020 had put a shed in the middle of his property that was easily accessible from the road that it fronted, which was Lime Tree Road, would you still be able to access that shed from Lime Tree Road? Or is that shed now sitting in the middle of Tangerine Road? Everything would have moved. Everything moved and you would still access it from Lime Tree Road. It is tough to say where it would have moved to because again, the road is moving differently in different spots. But yes, access would have been allowable there. Now, do you have any mineral rights? He's not alleging that. He's not asking for mineral rights. No. And the land is shifted. It's about 35 feet in depth, is that correct? Correct. So if we went down 35 feet over the GIS coordinates and you were interested in mineral rights, it seems to me you might have an argument. But everybody's property has moved and your property is still in the same relation to all of the surrounding property, including the roads, as it was before. There may be some minor variations. But again, if you had constructed a shed in the middle of your property, you'd still be accessing it from Lime Tree Road and not from Tangerine Road. That may be true, but that's not the issue in this case because it's a physical takings case. When this property, per everything, per the paperwork and when this road was constructed, had no road on it. It was an empty parcel that could have been developed. And that's part of the problem is this is an empty parcel that could have been developed, that could have had rights to it. It's still an empty parcel and it still fronts Lime Tree Road. It did not originally front Lime Tree Road. That's the issue. Lime Tree Road had nothing to do with this parcel. Lime Tree Road was multiple parcels away and then over time shifted onto my client's land and now it bisects my client's land. No, you're arguing that Tangerine Road bisects your property. Yes. Not Lime Tree Road. Oh, I am so sorry, Your Honor. Yeah, I'm so sorry. Right. But the surface land of your client's property is identifiable and is still accessible from Lime Tree Road, which it fronted. And it still fronts Lime Tree Road. Yes. The access for my client isn't the issue. The problem is the fact that you now have an entire community traveling through my client's land. Counsel, this really all depends on us accepting your argument that you're going to use GIS coordinates, doesn't it? That's partially true, Your Honor. But if you use meets and bounds, that is, you do it in relationship to other parcels, then your parcel is still identifiable and still fronts Lime Tree Road. If you do it by meets and bounds, then the meets and bounds of the road have nothing to do with my client's estates. The actual stated meets and bounds are multiple parcels away. And that's the problem. Again, this is a very specific. That's what I'm confused because the description, as I understand it, of the road and the meets and bounds, it triggers from the northwesterly corner of a lot, correct? And so if the lot moves, won't the meets and bounds shift as well? No, because again, there's already been a determination that the boundaries of the lots don't move. In the, I think it's the Joanna case, the opposing side argued and won in that case on the point that the boundaries of the lots don't move. So lot four, which is my client's lot, remains in place. This is the earthquake. This is the earthquake case. You're lot five, right? Yes. Not lot four. I apologize. Yes. Very confused. Sorry, Your Honor. But at the end of the day, the lot that my client, that their property is on, was not the lot as notified, as stated in the meets and bounds. And so when everything moved, when the meets and bounds, when the road moved, the meets and bounds of the easement were very specific as to where the lot, where the road traveled. And did they use GIS to measure the road? Or did they use meets and bounds? They use meets and bounds. It's relative to everything else in the area. It uses very specifics as to what the meets and bounds are. And the specifics that are used in the meets and bounds have nothing to do with my client's lot. And specifically point to the fact that it had, it was running through different lots. Again, a whole parcel and a half away. So the movement of the road had nothing to do with my client's lot. And now it is bisecting the lot. And the problem with that is now you have this constant road traffic. So you have a constant daily trespass upon the lot. Because you have all of these travelers, all of these roadsters driving along the road and bisecting the lot. Counsel, your client applied for a building permit, which was denied. He wanted to build a nice home and lower income properties on this. Did, in his application, how did he identify the property? How did he identify the property? How did he identify the property where he wished to build this property? Did he identify it by lot? I believe he identified that he wanted to build it on his lot. Okay. And if he had built it on that lot, where would those buildings be today? Those buildings today would be... Accessible from Lime Tree Road. And they would be on his property. Well, wait a minute. But you just told me that that's not his property. His property is being bisected by Tangerine Road, which we can drive on. Both roads are drivable, Your Honor. The problem is that you have one of them, which was not allowed, now bisecting his lot and allowing for ingress and egress through his lot without any proper approval. It feels like, and I don't mean this will turn out to be a comment I don't intend to, it feels like you're playing both sides of the street here. The GIS is useful for you in some respects, and the Meets and Bounds is useful for you in other respects, and you want to argue one at one time and another at another time. But the fact of the matter is this is a difficult situation. Nobody's happy about it. And we've got to deal with it. But the surface of your client's land is still where it used to be with respect to Lime Tree Road. Tangerine Road is not interfering with the surface of your client's property at all. If you were dealing with the mineral rights and we had to go down more than 35 feet, you might have an argument about Tangerine Road, but you're not here arguing about mineral rights. That is correct. We're not arguing mineral rights at the time. The issue that we are having, though, Your Honors, is that we have a taking that is a physical taking. This is a physical, it's a physical intrusion upon the lot, and it's a daily physical intrusion. So every single day, we now have travelers going up and down this road without an easement, without proper authority to, because, again, the owner of this lot never provided or gave any easement or right for anyone to be traveling this road along their lot. And so every single day now, we now have trespassers based upon this so-called road and the so-called easement that allowed it to. And the crux of it is, because it's a physical taking and because this was done on a summary judgment motion, we believe that it was improper to dismiss this case on summary judgment, that there's more than enough allegations and more than enough claims and facts that it is an issue of fact. At a certain point, you have a road that has now made it more difficult for any development of the land because the road bisects it and now takes up much of the lot itself. I apologize. I've kind of lost my place in my argument. So again, this road is fixed by a recorded survey map and the court held in Zistler and Seville the very case the district court cited that an easement specifying its precise location, width, and length is not a general easement. The map supplies these boundaries, Wilson versus Abrams. At a minimum, whether this is a specific or general easement is a disputed and dispositive question that cannot be decided against Lyme Tree on summary judgment. The city also can't have it both ways. In Joannu, the same city won by arguing that property boundaries in the Portuguese Bend do not move with the landslide. That was under the Cullen Earthquake Act. Yes, but it also held that the property boundaries don't move. So if the property boundaries don't move, then my client's lot remains static and then the road and the earth have just now moved onto it. So the city, I think the court was arguing that I'm trying to have it both ways, but the city is actively... But then, I mean, to go back to Judge Bybee's question, if you would put the shed on the property, the shed moves onto the neighbor's lot and your lot stays fixed. And that would... The shed and the road, everything on the surface moves across it. I mean, that's what has been happening. Your house is now down the block. I mean, you have the quote from the assessor saying, you know, that their house is three doors down from the lot that they own. And that is a general problem with the landslide in the area. And yes, that is, if you build something and it moves onto your neighbor's land, now you have a problem with that neighbor that you have to go through. And maybe it's their house now. Maybe part of it's their house now. Again, as I stated, my client has another property in the area where a neighbor's house moved onto their land. Through litigation, the demur was sustained. On appeal, it was sent back because it was determined that you cannot make that determination on a demur. And I believe it's very equal here. Making this determination on a summary judgment, when these are factual issues in dispute, is not appropriate. And we have to go back to the Cedar Point case. Because again, one of the main holdings in Cedar Point is the right to exclude. It is a fundamental element of property rights, the rights to exclude. And again, in Cedar Point, it found that it was a per se physical taking. Do you want to save some time for rebuttal? Yes, two minutes. Thank you.  All right. We will hear now from Mr. Winder. First of all, I want to congratulate the court on pronouncing my name correctly, because usually it's Winder. So thank you for that. Judge Collins and members of the panel, I appreciate the court's discussion of land movement. But in our view, that's not the issue. These are private properties on private roads. And in an effort to correct the record, the request was not a request for a building permit, but rather a request for a grading permit. Why is the city being dragged into the middle of a dispute between private property owners, a private property lot allegedly moving onto a private roadway, where the holders of the easement of the private roadway have expressly not consented to have that roadway moved? How is that a taking on the part of the government of the city of Rancho Palos Verdes? This is purely a private property dispute. If there are disputes between the homeowners association and the owner of this lime tree property about where their property is and where the roadway ought to be, trespass is not an issue where there is no government property involved. There simply can't be a taking here for at least two reasons. Reason number one, all that is involved here is private property. There is no city property involved. Reason number two, without the consent of the homeowners association who have reciprocal easement rights over Tangerine Road, there was no business that this property owner had even coming to the city asking for a grading permit. And what's troubling about this case is we don't discover the existence of this reciprocal easement until we're well into the litigation and we realize this plaintiff hasn't named all the indispensable parties to this case. So we brought a motion requiring naming of indispensable parties. And finally, the homeowners association is brought into the case and their lawyers say, we don't approve any scraping of our private roadway to which all of our property owners have access to. And we're not going to consent to that. Once that denial was issued, there was nothing left for the city to do. Even if the city had issued a grading permit, the homeowners association had a private property right to preclude any action to implement that grading permit. The thing that makes this case difficult, the court has seized on, is this troubling state law called the Cullen Act. The Cullen Act says that when you've had a landslide, you can adjust property boundaries when the landslide settles. The trouble with the Portuguese Bend landslide is it continues to move. And it has, depending on how rainy the seasons were, moved as little as an inch a month to as much as 12 inches a week. So there's no way to readjust these property boundaries. The court is correct. Because of a Cullen Act, we have to assume that the property is as described in the meets and bounds of the title documents and the easement documents, regardless of where the dirt is. And the dirt moves uniformly. This notion that somehow... So you agree that there's this kind of a concept of the grid, and then there's physical things on the surface of the land. The grid stays and the land just moves. Unfortunately, that is exactly what happens. But if you were to go out and survey that, the survey monuments that you would use to conduct your survey have moved with the dirt. So you're still going to have the same relationship. But that was the one question I had, is that I thought that the relevant easement here for the road triggered that beginning at a point, so many degrees, et cetera, and so many feet from the most northwesterly corner of Lot 10, Block 1, so if the meets and bounds are done from the Lot 10 and Lot 10 doesn't move, even though the soil above it moves, then wouldn't the easement then become detached from the road above it? Well, no, the easement would move with the roadway because the measuring point of the easements, the survey monuments move with the topsoil. So if you were to go out and measure that... The survey, the physical monuments on the soil are what counts and not the relationship to the grid as described in the meets and bounds? Well, so that's where we have to engage in a legal fiction. The survey monuments will actually move and they move together. But the meets and bounds description included in the title documents is the legal fiction by which we have to identify the lime tree property, tangerine road, and the related properties around that. Even though if you were to walk out there today, things are different from what they are described in the meets and bounds. But suggesting that the grid is fixed is really what the GIS does. It sort of takes it from space and says, here's where we can locate it relative between the North Pole and the South Pole and, you know, GMT, whatever it is you want to do, we can say this is the place on the surface of the earth. But the meets and bounds is more relative. It's a little more down to earth, so to speak. I agree. I agree. I just want to make sure I... So one other thing, if I could add, and I apologize for interrupting. LA County goes to great lengths to say, by the way, you can't trust our GIS survey. There's a great disclaimer about the accuracy of that GIS survey. So GIS survey is interesting. It's useful, but it's not relevant to the legal issues in this case. But I want to make sure that I really understand what your argument is about how the law works here. And so even though the written description of the easement is tied to the lot description, the actual easement that's recognized is tied to the physical monument that slides away from the lot grid, which remains fixed. Do I have that correct? As a practical matter, that's correct. But that's not the legal issue. All of this land, whether it's moving or not moving... Wouldn't it be a legal issue as to a threshold matter, whether or not the plaintiff even has a protectable interest? I'm sorry, I'm... So with respect to the grid and the GIS and the accuracy, doesn't this all come into play in determining whether or not Lime Tree even has an interest that their property is in fact being bisected? My answer to that is that's a great argument between the homeowners association and the private property owner. It's not an issue for the city of Rancho Palos Verdes. This is all private property. The trespass that's being alleged here is a private trespass. The question is, did the city, in denying the issuance of a grading permit, engage in a taking of property? It couldn't have as a matter of law because the dispute here, if there is a trespass, and I'm not conceding that there is, but assuming for the sake of argument, there is a trespass, that's a dispute between the Lime Tree property owner and the Portuguese Bend Property Association. It is not an issue for the city of Rancho Palos Verdes. With that, unless the court has any questions, I'll submit. All right. Thank you, Your Honor. All right, we'll hear rebuttal. Thank you, Your Honor. Just a couple of things. Number one, I wanted to point out the actual case related to what I was stating earlier. It's not a published opinion, but it can be used for the court if they request to take a look at it. The appellate case number is B340602. As I said, it's an unpublished case. Cal Court App 2nd District Division 2, December 19th, 2025. So I think it would be worthwhile for the court to take a look at that because it does deal with some of the same issues. And then to get to the other points that the city raised, the city absolutely refused to provide a permit. And the city's own representative said specifically that they will never issue a permit in Zone 6. That is a taking. The city made it quite clear that they will not and never will issue a permit, thereby refusing to do their job and refusing to engage in what the city is meant to do. And what their refusal to issue a permit basically sets a condition to where they put it now onto the private entity. So they have now given up their lawful duty as a city to undertake its job and now put it onto the private city. What are you asking the court to do with respect to the Portuguese Bend Community Association, which is the other appellee in this case? So at this time, we are looking for the city to issue a demolition permit so that we can demolish the road. Yeah, but the city says this is a private dispute between you and the PBCA. And they're hiding behind that because that's false. At the end of the day, they have- Are you asking, again, are you asking us to order any relief with respect to PBCA? Yes, we are. I mean, we're asking that the granting of the summary judgment be overturned and be sent back so that these issues of fact can be determined by the court. And yes, the issue with the PCBA is their constant everyday trespass of their members and their refusal to work with my client. The problem with the city is at the end of the day, they've stated they refuse to do their job and refuse to even consider any of these permits. It's in the record that they stated that they will not issue a permit in zone six, basically making zone six impossible for any kind of development. Any redevelopment, any demo, any kind of work. And that's where this parcel lands is zone six. So the city has put its fingerprints all over this by refusing to do its job and then saying, no, it's these private entities. They're the ones to do their job. And that's not appropriate for the city. They cannot hide behind this private entity. All right. Thank you, counsel. Thank you, your honors. All right. The case just argued will be submitted.
judges: BYBEE, COLLINS, Curiel